IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHEIKH DIAW, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil No. 3:25-cv-0131 |
| | ) Judge Stephanie L. Haines |
| LEONARD ODDO, *Facility Administrator* | ) |
| *Moshannon Valley Processing Center, et al.* | ) |
| | ) |
| Respondents. | ) |

## OPINION

**I.   Introduction**

Petitioner Cheikh Diaw ("Petitioner") filed a Motion for a Temporary Restraining Order ("TRO") (ECF No. 3) and Supporting Brief (ECF No. 4), along with a Motion for Leave to Proceed Informa Pauperis ("IFP") (ECF No. 1) on May 1, 2025. Petitioner was notified that his Motion for IFP was defective and that the case could not proceed (ECF No. 6). Petitioner cured the defect and also filed a Petition for Writ of Habeas Corpus (ECF No. 11) and supporting Brief (ECF No. 12). The case was re-opened and service of the Petition was ordered. On July 7, 2025, Respondents filed a Response to the Petition (ECF No. 18), and on July 18, 2025 Petitioner filed a Reply (ECF No. 20).

On July 24, 2025, Petitioner filed a second Emergency TRO asking for a hearing and release from custody (ECF No. 24). He represented that there was a recent conference where the Senegal Embassy stated Petitioner is not and has never been a citizen of Senegal. Petitioner asserts that his removal, therefore, cannot be imminent and he should be released from ICE custody. The Court understands Petitioner to be arguing that a prolonged detention violates his due process rights under the Fourteenth Amendment. The Court issued an Order granting the Motion to

preserve the status quo and prevent irreparable harm and ordered a response (ECF No. 26). Respondents were ordered temporarily enjoined from removing or transferring Petitioner pending further order of court. ECF No. 26, p. 3. Respondents filed a Response in Opposition to the second TRO on August 1, 2025 (ECF No. 28). Petitioner moved to amend the TRO and for an extension of time to respond to the opposition filed by Respondents (ECF No. 31).

For the reasons below, the Court will deny Petitioner's motions.

## II. Background

Petitioner states in his first TRO that he was born in Senegal to French Citizen parents. ECF No. 4, p. 2. He does not have a Senegalese birth certificate or passport. ECF No. 4, p. 2. Petitioner moved to the United States in 1992, as a G4 nonimmigrant, where he has lived continuously. Petitioner's parents passed away when he was a minor. ECF No. 4, p. 2. Respondents and Petitioner report various instances of Petitioner's criminal activity and convictions dating as far back as 2004 and as recently as 2011. *See* ECF Nos. 4, p. 2; 28, p. 2.

On January 23, 2013, an administrative order of removal was issued. ECF No. 28, p. 2; ECF No. 28-1, p. 3. At that time, Petitioner states he was detained for six months and ICE could not effectuate his removal. ECF No. 4, p. 2. Petitioner was thereafter released on supervision. ECF No. 28, p. 2. Upon his release, Petitioner reported to ICE regularly. ECF No. 4, p. 2. Following a change in immigration policy, during Petitioner's annual meeting, Petitioner's release was revoked on April 3, 2025. ECF No. 28-1, p. 3; ECF No. 4, p. 3. At that time, he was detained by ICE agents and has remained continuously detained by ICE.

Respondents state that on May 6, 2025, a travel document request was sent to the Embassy of Senegal. ECF No. 28, p. 2. Furthermore, ICE's Enforcement and Removal Operations reviewed Petitioner's custody determination in June 2025 and recommended continued detention based on

his criminal record and likelihood of removal. ECF No. 28, p. 2. Petitioner states the "exigent" reason for his second TRO is that he participated in a nationality verification interview on July 21, 2025, which proved that the classification of his imminent removal is false. ECF No. 24, p. 1. He states the following points were established in the three-way video conference held between Petitioner, an official at the Senegalese Embassy, and Deportation Officer Phillips:

(1) Plaintiff is not now nor has he ever been a citizen of Senegal.
(2) The passport number referenced by Respondents in their Reply was not issued to Plaintiff.
(3) Plaintiff has never had a Senegalese passport or birth certificate.
(4) The Senegalese Government will not be issuing travel documents for [Petitioner].

Respondents state that the results of the nationality verification interview are pending. ECF No. 28, p. 3. Respondents characterize Petitioner's statements as "self-serving representations about what transpired during the nationality verification interview, [and that] Petitioner provides the Court with no verifiable information concerning the imminency of his removal." ECF No. 28, p. 7.

Petitioner contends that the Court should provide injunctive relief in the form of a Preliminary Injunction ("PI") and or a TRO because there is no likelihood of imminent removal and requests a hearing for his immediate release from custody. ECF No. 24, p. 2. The Respondents counter that Petitioner's TRO/PI should be denied because his detention is within the six-month presumptive period; he has not shown that there is no significant likelihood of removal in the foreseeable future; he has not shown irreparable harm; and he has not proven it would be in the public interest to grant his motion. The Court considers the issues forthwith.

**III.    Analysis**

As an initial matter, the Court denies Petitioner's motion for an extension of time to respond to the opposition to his TRO/PI (ECF No. 31).[1] Likewise, the Court finds that amendment of the TRO would be futile. *See Hockenberry v. SCI Cambridge Springs/Pennsylvania Dep't of Corr.*, 2019 WL 2270345, at *3 (W.D. Pa. May 28, 2019) (stating "[t]he U.S. Court of Appeals for Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile"). The facts presented cannot satisfy the requirements (a likelihood of success on the merits) of a TRO/PI as explained below,[2] and there is no further discussion that would alter the Court's ruling.

Petitioner's assertion that he is being unreasonably detained because his likelihood of removal is in question does not warrant a TRO or PI. Preliminary injunctive relief is an "extraordinary remedy" and "should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). A party seeking to obtain such relief must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction

---

[1] The Court notes that it reviewed Petitioner's "amendment" of the TRO (ECF No. 31) which added an argument based on *Sering Ceesay v. Steve Kurzdorfer*, 25-cv-267 (W.D. NY 2025). The Court found neither the case nor Petitioner's argument persuasive. Petitioner argues that his notice of revocation of release (ECF No. 31-1) was not signed by "the EAC or the Field Director" but instead signed "by an unnamed person for the Field Director". Petitioner provides no legal argument or factual proof that the signature is not proper. Furthermore, *Ceesay* provides no support for Petitioner's argument. The *Ceesay* Court granted a temporary release for a detainee "to a public place under the conditions of his order of supervision, and he must be afforded the 'opportunity to prepare for an orderly departure' promised in his Release Notification." This Court struggles to find any rule of law from *Ceesay* that applies to the case at hand.

[2] The Court notes that Petitioner's use of a TRO to bring about his immediate release is improper. As a result of Sections 1252(a)(5) and (b)(9), district courts "lack jurisdiction to review most claims that even relate to removal ... [b]ecause judicial review of a final order is available only in the court of appeals, district courts cannot review [] 'arising from' claims either." *E.O.H.C. v. Sec'y U.S. DHS*, 950 F.3d 177, 184, 186 (3d Cir. 2020) (holding, however, that Section 1252(b)(9) does not pose a jurisdictional bar "when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal"); *see also Tazu v. AG U.S.*, 975 F.3d 292, 299 (3d Cir. 2020) ("[T]he legal questions [petitioner] raises about the scope of the Attorney General's discretion to re-detain him *are bound up with (and thus 'aris[e] from')* an 'action taken' to remove him[.]") (emphasis added).

is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Id.*

Failure to satisfy the first factor of the analysis—a likelihood of success on the merits—necessitates denial of the injunctive request. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)). It follows that district courts need not address the other factors if the moving party fails to establish the first factor. *See Marvin R.V. v. Tsoukaris*, No. 20-CV-5225, 2020 WL 6689760, at *5 n.2 (D.N.J. Nov. 13, 2020) (collecting Third Circuit cases to support the statement that "[because the p]etitioner has failed to meet his burden with respect to the likelihood of success on the merits, the Court need not address the remaining factors"); *see also Peter v. Att'y Gen. of New Jersey*, No. 23-CV-3337, 2023 WL 4627866, at *1 (D.N.J. July 19, 2023).

Petitioner fails to meet his burden with respect to the first element of injunctive relief. Petitioner is not likely to succeed on the merits of this case first because he has not been detained for an unreasonable amount of time, and second, he has not shown that removal is unlikely in the foreseeable future.

In *Zadvydas*, the Supreme Court decided that 8 U.S.C. § 1231(a)(6), the post-removal-period statute, authorizes the Government to detain a removable alien "only for a period *reasonably necessary* to secure the alien's removal," rather than "*indefinitely* beyond the removal period." 533 U.S. at 682 (emphasis in original). The *Zadvydas* Court prescribed the presumptively reasonable time period as six months. *Id.* at 701. The presumptively reasonable time period is only a presumption—not an ironclad timeframe. *Id.* ("This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of

5

removal in the reasonably foreseeable future."). The applicable burden only shifts to the Government if, in addition to showing that the post-removal-order detention has surpassed six months, the alien also shows that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* ("After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.").

Petitioner's detention of approximately four months accords with 8 U.S.C. § 1231(a)(6) and does not violate his due process rights. Indeed, given the posture of his removal status, Petitioner's detention could be extended past the presumptive six-month period. In addition, Petitioner has had a review as recently as June 2025 wherein it was determined that given his criminal history and his likely removal, he should remain detained. The Court does not find that Petitioner's due process rights are in jeopardy.

This Court also finds that Petitioner has not proven that there is no likelihood of imminent removal. "In instances where an alien is unable to produce evidence demonstrating good cause to believe that there is no significant likelihood of removal in the reasonably foreseeable future, courts have sustained continuing periods of *detention pending removal* well beyond the six-month time frame described as presumptively reasonable by the Supreme Court in *Zadvydas*." *Kamara v. Warden, Clinton Cnty. Corr. Facility*, No. 1:21-CV-4, 2021 WL 1971502, at *9 (M.D. Pa. Apr. 12, 2021) (emphasis added) (collecting cases). Here, Petitioner has failed to produce evidence showing good cause to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. Petitioner's conclusory statements about the July 21, 2025 nationality verification interview are unavailing. The Court does not find that the alleged

statements made at the interview proved that the classification of his imminent removal is false. Conversely, Respondents have shown that steps have been taken to carry out Petitioner's removal.

Given the relatively short amount of time of detention, the recent bond hearing, and the global picture of Petitioner's removal posture, the Court finds Petitioner has failed to establish the likelihood of success on the merits of his claims. Therefore, the Court must deny his TRO Motion. *See Instant Air Freight Co.*, 882 F.2d at 800.[3]

### IV.  Conclusion

For all of the foregoing reasons, the Court will deny Petitioner's Motion for a TRO/PI (ECF Nos. 3, 24) as well as deny Petitioner's Motion to for an Extension to Respond to the Opposition to the TRO (ECF No. 31).

An appropriate Order follows.

DATED: August 11, 2025

STEPHANIE L. HAINES
U.S. DISTRICT COURT JUDGE

---

[3] The Court notes that, although it does not engage in an analysis of the remaining three factors, Petitioner is likely unable to meet his burden on any of the injunctive relief factors. For example, the fourth factor—the public interest—weighs heavily against Petitioner. Petitioner's previous convictions of theft, assault, and violating probation provide a legitimate basis for the Department of Homeland Security to conclude that Petitioner presents a public safety threat should he be released to the public immediately.